[No. C020580. Third Dist. Aug. 28, 1996.]

DAVID C. BAILEY, Plaintiff and Appellant, v.
FILCO, INC., Defendant and Respondent.

**COUNSEL**

Eugene J. Davis and Sheldon C. Hadley for Plaintiff and Appellant.

Andresen & James, Robert N. Paige, Bolling, Walter & Gawthrop and Marjorie E. Manning for Defendant and Respondent.

## OPINION

**DAVIS, J.**—Plaintiff David C. Bailey (Bailey) was injured in an automobile accident with Carolyn Shinn (Shinn), an employee of defendant Filco, Inc. (Filco), a retail business engaged in the sale and rental of electronic goods and appliances. Bailey sued Filco under a theory of respondeat superior. At the time of the accident, Shinn was on a paid break and was driving to obtain some cookies to eat back at work. The jury found that Shinn was not engaged within the scope of her employment at the time of the accident, and the court entered judgment for Filco. On appeal Bailey contends that Shinn was acting within the scope of employment as a matter of law when the car accident occurred.

We conclude, as a matter of law, that Shinn committed the alleged tort outside the scope of her employment. Consequently, we affirm the judgment.

## BACKGROUND

During a paid, morning break while working at Filco, Shinn drove to The Cookie Tree to buy cookies for herself and at least one other employee to eat while on duty. Shinn did not notify a supervisor that she was taking her break or leaving the premises—nor did she have to—and no Filco supervisor sent Shinn to The Cookie Tree to buy the cookies or to run an errand for Filco. While driving down a four-lane city street, Shinn realized she had passed her destination, attempted to make a U-turn, and collided with Bailey's car at approximately 10:50 a.m. Afterwards, Shinn returned to work at Filco.

Shinn worked at Filco as a full-time, hourly sales cashier. Her duties included ringing up merchandise, selling small appliances, and renting videos. Her duties did not include driving, and Shinn never used her car for work purposes. Filco did not even request Shinn to bring a car to work.

Filco did not require that Shinn clock out for her 2 daily, 10-to-15-minute breaks. Filco did ask its hourly employees to clock out for lunch. Filco only asked Shinn to make sure another Filco employee was operating the cash register and waiting on customers before she left on a break. Otherwise, Filco operated with a "hands-off" management style regarding breaks. The Filco management never scheduled Shinn's breaks. Filco never required Shinn to remain on the premises during a break, obtain a supervisor's permission to take a break or leave the store on break, or even notify a supervisor that she was taking a break. Filco did not prohibit Shinn from using her car during a break. Filco management considered an employee on

break to be free from work, and there is no evidence Shinn was ever asked to assist with customers while on her break. Filco provided a break room for its employees, complete with coffee, cokes, and a place to sit and relax; on previous occasions, Shinn had used this break room. However, use of the break room did not change the fact that the employee was on break.

This appeal presents the issue of whether, as a matter of law, Shinn was within her scope of employment when she drove during her ten-to-fifteen-minute unscheduled, paid break to purchase cookies to eat back at work.

DISCUSSION

### 1. Standard of Review

■    Whether a tort was committed within the scope of employment is generally a question of fact. (*Perez* v. *Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968 [227 Cal.Rptr. 106, 719 P.2d 676] (*Perez*).) But when the material facts are undisputed and no conflicting inferences are possible, as here, the question becomes one of law for our independent consideration. (*Tryer* v. *Ojai Valley School* (1992) 9 Cal.App.4th 1476, 1480 [12 Cal.Rptr.2d 114] (*Tryer*); *Perez, supra*; *Alma W.* v. *Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 138 [176 Cal.Rptr. 287] (*Alma W.*).)[1]

### 2. Theory of Respondeat Superior

■    Under the theory of respondeat superior, an employer is vicariously liable for an employee's torts committed within the scope of employment. (*Perez, supra*, 41 Cal.3d at p. 967; *Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 208 [285 Cal.Rptr. 99, 814 P.2d 1341] (*Mary M.*); *Lisa M.* v. *Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296 [48 Cal.Rptr.2d 510, 907 P.2d 358] (*Lisa M.*).) This theory is justified as " 'a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's

---

[1]The parties have two minor factual disagreements. First, Bailey contends Shinn "was equivocal as to how many co-employees she intended to provide cookies to upon her return," but that on prior occasions she had gotten cookies "for the people at work"; Filco maintains Shinn went only for herself and one other employee. Whether or not Shinn intended to purchase cookies for herself and another employee or every Filco employee on duty is immaterial; what is important is that no Filco supervisor instructed Shinn to buy cookies at The Cookie Tree or to run any type of errand. Secondly, Filco maintains that Shinn's supervisor was aware of only one of Shinn's prior trips, while Bailey contends Shinn's supervisor was aware of more than one trip made by Shinn and other employees. However, these differences are not material and do not affect the outcome of this appeal. There is no evidence of any express or implied Filco directive, oversight or participation particular to Shinn's "cookie run(s)."

enterprise, are placed upon that enterprise itself, as a required cost of doing business.'" (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 959-960 [88 Cal.Rptr. 188, 471 P.2d 988] (*Hinman*), quoting Prosser, Law of Torts (3d ed. 1964) p. 471.) The employer is liable not because the employer has control over the employee or is in some way at fault, but because the employer's enterprise creates inevitable risks as a part of doing business. (*Ibid.*; *Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 618 [124 Cal.Rptr. 143] (*Rodgers*); *Mary M., supra,* 54 Cal.3d at p. 208.) Under this theory, an employer is liable for "the risks inherent in or created by the enterprise." (*Hinman, supra,* 2 Cal.3d at p. 960.)

██ The court in *Rodgers, supra,* 50 Cal.App.3d 608, explained this concept of inherent business risks. "One way to determine whether a risk is inherent in, or created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity. However, 'foreseeability' in this context must be distinguished from 'foreseeability' as a test for negligence. In the latter sense 'foreseeable' means a level of probability which would lead a prudent person to take effective precautions whereas 'foreseeability' as a test for *respondeat superior* merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among the other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by the employer. [Citation.]" (*Id.,* at pp. 618-619, italics in original.)

██ In *Perez, supra,* 41 Cal.3d 962, the California Supreme Court adopted this foreseeability-based explanation from *Rodgers* as the test for determining scope of employment. (41 Cal.3d at p. 968.)

Building from this foreseeability premise, some courts have employed a "two-prong" test and ask if the employee's action is (1) "either required or 'incident to his duties'" or (2) "could be reasonably foreseen by the employer in any event. . . ." (*Clark Equipment Co.* v. *Wheat* (1979) 92 Cal.App.3d 503, 520 [154 Cal.Rptr. 874], citations omitted; see, e.g., *Alma W., supra,* 123 Cal.App.3d 133, 139; *Debbie Reynolds Prof. Rehearsal Studios* v. *Superior Court* (1994) 25 Cal.App.4th 222, 227 [30 Cal.Rptr.2d 514]; *Spradlin* v. *Cox* (1988) 201 Cal.App.3d 799, 809 [247 Cal.Rptr. 347]; *Avila* v. *Standard Oil Co.* (1985) 167 Cal.App.3d 441, 447 [213 Cal.Rptr. 314]; *Jeffrey E.* v. *Central Baptist Church* (1988) 197 Cal.App.3d 718, 721 [243 Cal.Rptr. 128]; *Martinez* v. *Hagopian* (1986) 182 Cal.App.3d 1223, 1228 [227 Cal.Rptr. 763].) If the employee's act satisfies either part of this

two-prong test, the employer is liable. (*Alma W.*, *supra*, 123 Cal.App.3d at 139.)

No matter how the test is phrased, respondeat superior liability does not require that the employee's actions benefit the employer. (*Perez*, *supra*, 41 Cal.3d at p. 969; *Lisa M.*, *supra*, 12 Cal.4th at p. 297.) For our purposes, the most important principle in this regard is that "acts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal to himself and not acts of service, do not take him outside the scope of his employment. . . ." (*Alma W.*, *supra*, 123 Cal.App.3d at p. 139, citations omitted; see *DeMirjian* v. *Ideal Heating Corp.* (1954) 129 Cal.App.2d 758, 765 [278 P.2d 114] (*DeMirjian*).)

■ Although an employee does not have to be engaged in an act directly benefiting the employer, respondeat superior liability is not synonymous with strict liability. The employer is not liable for every act of the employee committed during working hours. (*Alma W.*, *supra*, 123 Cal.App.3d at p. 139.) "Under [the respondeat superior] doctrine, '[t]he cases which have considered recovery against the master for accidents occurring within the scope . . . of employment have established a general rule of liability with a few exceptions for cases where the employee has *substantially deviated from his duties for personal purposes.*' [Citation.]" (*Perez*, *supra*, 41 Cal.3d at p. 968, italics in original.)

Respondeat superior liability demands a nexus between the employee's tort and the employment to ensure that liability is properly placed upon the employer. "The nexus required for respondeat superior liability—that the tort be engendered by or arise from the work—is to be distinguished from 'but for' causation. That the employment brought tortfeasor and victim together in time and place is not enough. We have used varied language to describe the nature of the required additional link (which, in theory, is the same for intentional and negligent torts): the incident leading to injury must be an 'outgrowth' of the employment . . . ; the risk of tortious injury must be ' "inherent in the working environment" ' . . . or ' "typical of or broadly incidental to the enterprise [the employer] has undertaken." ' . . ." (*Lisa M.*, *supra*, 12 Cal.4th at p. 298, citations omitted.) Yet another way to describe the necessary linkage is the employee's tort must be "foreseeable *in light of* [*the employee's*] *duties.*" (*Alma W.*, *supra*, 123 Cal.App.3d at p. 142, italics in original.)

■ On two grounds, Bailey argues that the foreseeability-based scope of employment test set forth in our high court's decision in *Perez* differs from the two-prong scope of employment test which explicitly discusses

foreseeability only in the second prong. Bailey first argues that the first prong of the two-prong test does not require a nexus between the employee's tort and the employee's duties so long as the employee engages in an act of comfort and convenience while on a paid break. Secondly, Bailey asserts that the foreseeability analysis applies only to the second prong. Examination of the respondeat superior doctrine, however, shows the two-prong test is substantively similar to the foreseeability-based test.

Bailey's first argument ignores the explicit link between an employee's acts and an employee's duties set forth in the first prong of the two-prong test. This argument would also allow an employee to engage in *any* act of personal comfort and convenience while on break and still be considered within the scope of employment. This would make respondeat superior liability, in these contexts, synonymous with strict liability. Such a result directly contradicts the recognition that respondeat superior liability is inapplicable when an employee has substantially deviated from his or her duties for personal purposes. (*Hinman, supra,* 2 Cal.3d at p. 960; *Perez, supra,* 41 Cal.3d at p. 968; *Alma W., supra,* 123 Cal.App.3d at p. 139.) Moreover, it would strain logic to *dispense* with the nexus requirement on the rationale that the employee had been engaged in an act of *personal* comfort and convenience; such an act tends to take an employee farther from the scope of employment rather than closer.

In his second argument on the applicable tests, Bailey contends that because only the second prong of the two-prong test mentions foreseeability, the first prong does not require foreseeability for Filco to be liable for Shinn's trip. Yet a comparison of the foreseeability-based test and the two-prong test refutes this. Under the first prong of the two-prong test, respondeat superior liability attaches if the employee's act is "either required or 'incident to his duties' . . . ." (*Clark Equipment Co.* v. *Wheat, supra,* 92 Cal.App.3d at p. 520, citation omitted.) Such an act would not be considered—in the words of the foreseeability-based test—"so unusual or startling that it would seem unfair" to appropriate the resulting loss to the employer; and any resulting tort could " ' "fairly be regarded as typical of or broadly incidental" to the enterprise undertaken by the employer. . . .' " (*Perez, supra,* 41 Cal.3d at p. 968, citations omitted; see *Rodgers, supra,* 50 Cal.App.3d at pp. 618-619.) In other words, when the first prong of the two-prong test is satisfied, so are both the nexus and respondeat superior foreseeability requirements. In addition, respondeat superior foreseeability involves a nexus requirement for liability, and not simply a " 'but for' causation." (See *Lisa M., supra,* 12 Cal.4th at p. 298.) In short, the foreseeability-based test and the two-prong test are not so much different tests, but different ways of articulating the same test for scope of employment.

■ Finally, in the development of the respondeat superior doctrine, courts have occasionally looked toward workers' compensation cases for guidance. (See *Alma W.*, *supra*, 123 Cal.App.3d at 143; *Rodgers*, *supra*, 50 Cal.App.3d at p. 619.) However, the test for workers' compensation liability is broader than that for respondeat superior. (*Wickham* v. *North American Rockwell Corp.* (1970) 8 Cal.App.3d 467, 472 [87 Cal.Rptr. 563]; *Church* v. *Arko* (1977) 75 Cal.App.3d 291, 299-300 [142 Cal.Rptr. 92].) The California Supreme Court has recognized that workers' compensation cases do not dictate the outcome under a respondeat superior analysis. "We note that 'the test under the [workers'] compensation law of "arising out of and in the course of employment" (Lab. Code, § 3600), is not identical with the test of "scope of employment" under the *respondeat superior* doctrine. . . .' . . . Thus, although worker's compensation cases can be helpful in determining the employer's vicarious liability for its employee's torts . . . , they are not controlling precedent 'when liability is predicated upon respondeat superior principles.' . . ." (*Perez*, *supra*, 41 Cal.3d at p. 967, fn. 2, citations omitted, italics in original; see *Anderson* v. *Pacific Gas & Electric Co.* (1993) 14 Cal.App.4th 254, 259 [17 Cal.Rptr.2d 534].)

### 3. *Application of Respondeat Superior Principles*

■ Whether liability attaches to Filco for Bailey's injuries depends upon whether Shinn's trip to The Cookie Tree was within the scope of Shinn's employment. Under the scope of employment test articulated above, we must ask whether the risks accompanying Shinn's trip to The Cookie Tree on an unscheduled, paid break to buy cookies were typical of or broadly incidental to Filco's business or were incidental to Shinn's duties; in other words, was Shinn's trip so unusual or startling in the context of Filco's business or in light of Shinn's duties that it would seem unfair to include Bailey's injuries from the auto accident among the costs of operating the Filco business. (*Perez*, *supra*, 41 Cal.3d at p. 968.) Essentially, we must ask whether Shinn's trip to The Cookie Tree was a substantial deviation from Filco's business or Shinn's duties.

Incidental risks of the Filco business that would be within the scope of employment include, as previously noted, "[a]cts necessary to the comfort, convenience, health and welfare of the employee while at work. . . ." (*DeMirjian*, *supra*, 129 Cal.App.2d at p. 765; see also *Alma W.*, *supra*, 123 Cal.App.3d at p. 139.) In *DeMirjian*, an employee left his work station to go smoke in the washroom on the premises and use its facilities. The defendant employer prohibited employees from smoking anywhere in the shop except the washroom. It was the employee's general practice to smoke in the washroom four or five times daily. On his way to the washroom, the

employee stopped to fill his empty cigarette lighter with fluid from a thinner drum located next to the aisle used to get to the washroom. While filling the lighter, the employee accidentally ignited it and started a fire. The fire caused extensive damage to the plaintiffs' building in which both the defendant employer and plaintiffs operated their businesses. The trial court granted the defendant employer a directed verdict, and the plaintiffs appealed.

The *DeMirjian* court reversed; it concluded that "[a]cts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal to himself and not acts of service, do not take [the employee] outside the [scope] of his employment[,]" and employers " 'necessarily contemplate[]' " that an employee will engage in such acts. (*DeMirjian, supra*, 129 Cal.App.2d at p. 765.) In other words, an employer cannot deny responsibility for a tort that occurs when an employee engages in an act necessary to his or her comfort and convenience while at work. The court found that the employee's trip to the washroom was within the scope of employment because using the facilities and smoking were acts necessary to the employee's health and comfort. (*Id.*, at p. 771.) *DeMirjian* also found the employee's act of stopping to fill the lighter was a deviation, and thus presented a question of fact for the jury as to whether the deviation was substantial enough to be a complete departure from the employer's business to justify removing the employee's tort outside the scope of employment. (*Id.* at p. 772.)

According to Bailey, *DeMirjian* establishes the general proposition that the respondeat superior relationship continues as a matter of law when an employee is on break and engaging in an act of comfort; however, Bailey ignores the necessary nexus requirement. *DeMirjian* carefully tailored what constitutes an act of comfort and convenience leading to vicarious liability—going to the washroom at work to use the facilities and smoke. (*DeMirjian*, 129 Cal.App.2d at p. 772.) In other words, *DeMirjian* implies that the required nexus between the employee's duties and his conduct is present in going to the washroom at work. However, filling a cigarette lighter with fluid is not necessarily an act of comfort and convenience within the scope of employment, despite the fact the employee had no other available means to light his cigarette. (*Ibid.*) In questioning whether the deviation to fill the lighter was substantial, the *DeMirjian* court was examining the nexus between the employee's tort and the employer's business.

Bailey also attempts to analogize Shinn's drive to The Cookie Tree to the employee's walk from his work station to the washroom in *DeMirjian*. Bailey claims Shinn's trip was necessary to her comfort and convenience.

But Bailey's analogy is faulty. The *DeMirjian* court noted that "[a]cts necessary to the comfort, convenience, health, and welfare of the employee *while at work* . . . do not take [the employee] outside the course of his employment." (*DeMirjian, supra,* 129 Cal.App.2d at p. 765, italics added.) *DeMirjian* is limited because the employee went to the washroom at his place of employment to use the facilities.

*DeMirjian* also states, "deviations which do not amount to a turning aside completely from the employer's business, so as to be inconsistent with its pursuit, are often reasonably expected . . . . In order to release an employer from liability, the deviation must be so material or substantial as to amount to an entire departure. [Citation.]" (129 Cal.App.2d at p. 766.) Bailey claims that Shinn's deviation was a minor one under *DeMirjian* because Shinn did not "abandon" her job or compromise her effectiveness as a sales cashier when going to The Cookie Tree. But obviously the *DeMirjian* court did not consider the deviation of filling the lighter (so the employee could enjoy his act of comfort) to be within the scope of employment as a matter of law. Shinn did more than just stop her work for a minute to take a bite of a cookie. She did more than simply walk to Filco's break room to eat cookies. During a 10-to-15-minute break, she got in her own car and drove off the work premises onto a 4-lane thoroughfare to purchase cookies to eat back at work. This activity is more akin to the *DeMirjian* employee's deviation to fill the lighter than his walk to the washroom. (See also *Alma W., supra,* 123 Cal.App.3d at p. 141; see also Annot., Employer's Liability For Negligence of Employee in Driving His or Her Own Automobile (1995) 27 A.L.R.5th 174, § 87, Travel on Breaks, pp. 468-470.)

We conclude that Shinn's trip to The Cookie Tree on her morning break did not encompass risks typical of or broadly incidental to Filco's business or Shinn's duties.

As one would expect, we reach a similar conclusion by examining the closely related question of whether Shinn's trip was so unusual or startling in the context of Filco's business or in light of Shinn's duties that it would be unfair to impose the cost of Bailey's injuries on Filco. (*Perez, supra,* 41 Cal.3d at p. 968; *Rodgers, supra,* 50 Cal.App.3d at p. 619; *Alma W., supra,* 123 Cal.App.3d at pp. 141-142.) The central part of this inquiry asks whether Shinn's trip to The Cookie Tree was a "minor deviation" and foreseeable or a "substantial departure" and unforeseeable. (*Lazar v. Thermal Equipment Corp.* (1983) 148 Cal.App.3d 458, 464-465 [195 Cal.Rptr. 890] (*Lazar*); *DeMirjian, supra,* 129 Cal.App.2d at p. 772.) As always, a nexus must exist between Shinn's trip to The Cookie Tree and her employment duties or context for Filco to be liable. (*Lisa M., supra,* 12 Cal.4th at p. 298; *Alma W., supra,* 123 Cal.App.3d at p. 142.)

As a sales cashier at Filco, Shinn's duties included working in the store renting videos, operating the cash register, and selling appliances along with other merchandise. Filco management never instructed her to use her car to run Filco errands or to buy cookies. Shinn never received any money from Filco or Filco management for the cookies she bought. She left the premises to buy cookies during her break, when she was essentially on her own time. Filco considered Shinn to be free from her duties while on break, and there is no evidence Shinn was ever asked to assist with customers during a break. The fact she was being paid while on the break, in and of itself, is not enough to place her trip within the scope of employment. Shinn was not "at work" engaging in an act of comfort and convenience that had a nexus to her employment. (Cf. *DeMirjian*, *supra*, 129 Cal.App.2d at pp. 765, 771-772.)

. Bailey, however, reads *Lazar*, *supra*, 148 Cal.App.3d 458 as establishing that an employee is acting within the scope of employment as a matter of law when the employee deviates from his duties to purchase an item at a store strictly for his own convenience because such a deviation is minor and foreseeable. Bailey argues that Shinn's activity in obtaining cookies to eat at work was no less necessary to her comfort and convenience than the trip to the grocery store at issue in *Lazar*.

In *Lazar*, the employee of defendant Thermal Equipment was on call as a troubleshooter on weekends and after normal business hours. In addition, the employee sometimes drove directly from his home to a jobsite. Due to the nature of the employee's duties, the employer permitted the employee to take the company truck home on a daily basis and use it for personal purposes. The employer bought the truck's gas. After leaving work for the day in the company truck, the employee hit the plaintiff. At the time of the accident, the employee was heading to a store to buy personal items before heading home. The *Lazar* court concluded, as a matter of law, that the employee was acting within the scope of employment because his personal errand was a minor deviation and foreseeable. (148 Cal.App.3d at pp. 464-465.)

However, *Lazar* is narrowly tailored and not applicable to the facts before us. Given the *Lazar* employee's use of the company truck and his duties as an on-call troubleshooter, the court there found the employer derived a special, tangible benefit from the employee's commute to and from work. (*Lazar*, *supra*, 148 Cal.App.3d at p. 463.) The *Lazar* court stated, "While [the acts necessary to the comfort convenience, health, and welfare of the employee] standard was suggested for deviations 'at work,' we think it is applicable to deviations made on the way home, *in the employer's vehicle, when the trip home benefits the employer*." (*Id.* at p. 466, italics added.)

Significantly, the *Lazar* court did not find the employee's incidental act of convenience to be the benefit to the employer. As Filco correctly notes, driving the company truck and being an on-call trouble-shooter were part of the employee's duties in *Lazar*, and he was engaged in these duties when the accident occurred. No such benefit is present in Filco's case. Driving and running errands for Filco were not included under Shinn's job description, and Shinn had never used her car for work purposes. Filco did not even require Shinn to bring a car to work. On the morning of the accident, no Filco supervisor instructed Shinn to buy cookies at The Cookie Tree or to run an errand. We decline to accept Shinn's personal "cookie run" as a benefit to Filco.

Bailey alleges that a frequently committed act, although unauthorized, is not a substantial departure and is therefore foreseeable. Bailey relies on our high court's decision in *Perez, supra,* 41 Cal.3d 962. We also disagree with Bailey's interpretation of this case.

In *Perez,* an employee followed his employer's instructions to disk an orchard. During this disking, the employee had the plaintiff on the tractor as a passenger. A tree branch knocked the plaintiff off the tractor into the disking attachment. The employer testified his employees were prohibited from taking passengers on the tractors while the employee denied knowledge of this policy. The *Perez* court concluded the employee was acting within the scope of employment as a matter of law. In imposing respondeat superior liability, the *Perez* court did not use the fact that employees frequently took unauthorized passengers on the tractor and therefore their conduct was foreseeable. Rather, the employer was liable because at the time of the injury the employee "was principally engaged in disking, his employer's business," and "was following his employer's instructions to disk the orchard"; the fact that he was not authorized to take a passenger was deemed immaterial. (41 Cal.3d at pp. 967, 969.)

Cases involving lunchtime travel also offer some guidance on the issue before us. ▪ California courts have recognized a general rule that when an employee travels to and from lunch in the employee's own car and is not engaged in furthering any end of the employer, the employee is not acting within the scope of employment. (See *Peccolo* v. *City of Los Angeles* (1937) 8 Cal.2d 532, 539 [66 P.2d 651]; *Gipson* v. *Davis Realty Co.* (1963) 215 Cal.App.2d 190, 209 [30 Cal.Rptr. 253] [*Gipson* concluded that this rule applies even when the employee is driving a company car]; see also *Tryer, supra,* 9 Cal.App.4th at pp. 1482-1483.) Undoubtedly, there are differences between a lunch period and a mere break, especially for hourly employees like Shinn who must clock out for lunches but not for breaks. Nevertheless,

the employment nexus is similar in both the lunch and break contexts when the employee uses his or her own car to travel during these periods merely to obtain something to eat.

■ Finally, the reasons for applying respondeat superior liability do not support imposing liability on Filco. Those reasons are: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury. [Citations.]" (*Mary M.*, *supra*, 54 Cal.3d at p. 209.)

It is true that imposing liability on an employer such as Filco might help to prevent this type of tortious conduct from occurring again. For example, the employer could require its employees to remain on the premises during paid breaks.

But the benefits to be achieved through imposing liability here are outweighed by the inequities that would be spawned; these inequities would threaten the very foundation of the respondeat superior doctrine. It would be unfair to force an employer to pay for employee torts that are unconnected with the activities of the business. (See *Lisa M.*, *supra*, 12 Cal.4th at p. 298.) Forcing liability upon an employer for torts that do not arise from the enterprise contravenes the basic rationale underlying the theory of respondeat superior. (See *Hinman*, *supra*, 2 Cal.3d at pp. 959-960.) Bailey argues that if the tort arises from carrying out a business activity, the business should be liable because businesses, as a general rule, have deeper pockets than individuals. Bailey's argument first assumes that the tort arose from carrying out a *business activity*. We have concluded that Shinn was not engaged in a "business activity" at the time of the accident here. Furthermore, respondeat superior liability is not "merely a justification for reaching a 'deep pocket' or . . . based only upon an elaborate economic theory regarding optimal resource allocation." (*Rodgers*, *supra*, 50 Cal.App.3d at p. 618.) Even if "the deep pocket of an employer might give greater assurance of compensation for the victim, that desired economic end would be achieved *inequitably* because the victim's losses would *not* be borne by the person who benefited from the injury-producing activity." (*Le Elder* v. *Rice* (1994) 21 Cal.App.4th 1604, 1610 [26 Cal.Rptr.2d 749], italics in original.) Respondeat superior liability holds an employer economically responsible for those activities characteristic of the enterprise itself. (*Id.* at p. 1607; *Rodgers*, *supra*, 50 Cal.App.3d at p. 618.)

We conclude that Shinn's act of driving on her break to The Cookie Tree to buy cookies lacked the necessary linkage to Filco's enterprise or her

duties at Filco. Shinn's act was a substantial departure and unforeseeable. The reasons for applying the doctrine of respondeat superior do not support finding Filco liable under these circumstances. We conclude, as a matter of law, that Shinn was acting outside the scope of employment at the time of her accident with Bailey.

## DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Nicholson, J., concurred.