[No. E052434. Fourth Dist., Div. Two. Oct. 17, 2011.]

AUGUSTUS VOGT et al., Plaintiffs and Appellants, v.
HERRON CONSTRUCTION, INC., Defendant and Respondent.

646

COUNSEL

Julie A. Duncan for Plaintiffs and Appellants.

Bevins, Hellesen & Glauser, Kevin B. Bevins; Law Offices of Roxanne Huddleston and Roxanne Huddleston for Defendant and Respondent.

OPINION

**RICHLI, J.**—Plaintiff Augustus Vogt worked for the concrete subcontractor on a large construction project. Herron Construction, Inc. (Herron), was the framing contractor. An employee of Herron had parked his personal pickup truck close to where Vogt's employer was about to start pouring cement. Vogt therefore asked Herron's employee to move his truck. The employee complied, but in the process, he ran over Vogt.

Vogt sued Herron for personal injury on a respondeat superior theory. The trial court granted summary judgment for Herron, on the ground that Herron's employee had not been acting in the course and scope of his employment.

We must reverse. There was evidence that, by moving his truck, Herron's employee furthered the overall construction of the project; the resulting risk of injury was inherent to the enterprise. Moreover, even assuming that he had the subjective purpose of preventing damage to his own truck, moving the truck was necessary to his comfort, convenience, and welfare while on the job and thus still within the scope of his employment.

## I

## FACTUAL BACKGROUND

Herron was the framing subcontractor on a construction project in Riverside. Jesus Cruz was an employee of Herron. His job duties did not include driving.

On October 31, 2007, Cruz parked his own personal pickup truck at the worksite. No one had told him where to park. There was no designated parking area for subcontractors' employees. Employees typically parked near wherever they were assigned to work that day.

Performance Concrete (Performance) was the concrete subcontractor on the project. Vogt was an employee of Performance. When he noticed Cruz's truck, he thought, "Hey, we got to move th[at] because we can't get the cement truck in." He then asked Cruz to move his truck; he explained that Performance was about to start pouring cement nearby.

It was "normal" for construction workers to be asked to move their cars and other vehicles at a jobsite. As Vogt later explained, "It . . . happens all the time on a job site . . . . We're not going to pour if a car's there because we don't want the liability of splashing the paint."

When Cruz moved his truck, he ran over Vogt, injuring him.

## II

## PROCEDURAL BACKGROUND

In 2008, Vogt filed this action against Herron, asserting causes of action for negligence and for injuries arising out of the operation of a motor vehicle.

Vogt's wife, Keri Vogt, was also a plaintiff, claiming loss of consortium, and she is also an appellant. However, because her claim is dependent on her husband's, we will disregard her separate status. (See *Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 931, fn. 1 [80 Cal.Rptr.2d 811, 968 P.2d 522].)

Originally, Cruz and the general contractor, Lyle Parks, Jr., Inc. (Parks), were also defendants. The trial court, however, granted summary judgment in favor of Parks. Vogt settled with Cruz and voluntarily dismissed him.

Herron filed a motion for summary judgment, arguing that it was not liable on a respondeat superior theory because Cruz was not acting in the course and scope of his employment when the accident occurred. In his opposition, Vogt argued that there was a triable issue of fact with respect to whether Cruz was acting in the course and scope of his employment. The trial court granted the motion. Accordingly, it entered judgment in favor of Herron and against Vogt.

III

DISCUSSION

Vogt contends that there was a triable issue of fact with respect to whether, when Cruz ran over him, Cruz was acting within the course and scope of his employment.

A. *Standard of Review.*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

"[I]n moving for summary judgment, a 'defendant . . . has met' his 'burden . . . if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. . . .' [Citation.]"

(*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [107 Cal.Rptr.2d 841, 24 P.3d 493], second ellipsis added.) "We review the trial court's decision de novo . . . . [Citations.]" (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65–66 [99 Cal.Rptr.2d 316, 5 P.3d 874].)

B.  *General Respondeat Superior Principles.*

■  "Under the theory of respondeat superior, employers are vicariously liable for tortious acts committed by employees during the course and scope of their employment. [Citation.]" (*Lobo v. Tamco* (2010) 182 Cal.App.4th 297, 301 [105 Cal.Rptr.3d 718] [Fourth Dist., Div. Two].)

"The nexus required for respondeat superior liability . . . is to be distinguished from 'but for' causation. That the employment brought tortfeasor and victim together in time and place is not enough. [The California Supreme Court has] used varied language to describe the nature of the required additional link . . . : the incident leading to injury must be an 'outgrowth' of the employment [citation]; the risk of tortious injury must be ' "inherent in the working environment" ' [citation] or ' "typical of or broadly incidental to the enterprise [the employer] has undertaken" ' [citation].

". . . California courts have also asked whether the tort was, in a general way, foreseeable from the employee's duties. Respondeat superior liability should apply only to the types of injuries that ' "as a practical matter are sure to occur in the conduct of the employer's enterprise." ' [Citation.] The employment, in other words, must be such as predictably to create the risk employees will commit . . . torts of the type for which liability is sought.

■  ". . . [T]he tortious occurrence must be 'a generally foreseeable consequence of the activity.' In this usage, . . . foreseeability 'merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.' [Citations.] Th[is] foreseeability test is useful 'because it reflects the central justification for respondeat superior [liability]: that losses fairly attributable to an enterprise— those which foreseeably result from the conduct of the enterprise—should be allocated to the enterprise as a cost of doing business.' [Citation.]" (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 298–299 [48 Cal.Rptr.2d 510, 907 P.2d 358], fn. omitted.)

■  " '[T]he cases . . . have established a general rule of liability with a few exceptions for cases where the employee has *substantially deviated from his duties for personal purposes.*' [Citation.]" (*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968 [227 Cal.Rptr. 106, 719 P.2d 676].) "Thus, if

the employee 'inflicts an injury out of personal malice, not engendered by the employment' [citation] or acts out of 'personal malice unconnected with the employment' [citation], or if the misconduct is not an 'outgrowth' of the employment [citation], the employee is not acting within the scope of employment. Stated another way, '[i]f an employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior.' [Citation.] In such cases, the losses do not foreseeably result from the conduct of the employer's enterprise and so are not fairly attributable to the employer as a cost of doing business." (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1005 [47 Cal.Rptr.2d 478, 906 P.2d 440].)

### C. *Application of Respondeat Superior to These Facts*

In applying these principles to this case, we begin with the fact that Vogt asked Cruz to move his truck for a work-related purpose—so Performance could pour cement. In Herron's view, the fact that *Vogt* had a work-related purpose is irrelevant. It argues that *Cruz* had the non-work-related purpose of preventing damage to his personal vehicle. At least for purposes of summary judgment, however, it is reasonably inferable that Cruz was, at a minimum, combining his personal business with that of his employer.

Cruz did not testify to why he moved his truck. However, Vogt testified that he asked Cruz to move his truck for several reasons. First, it was blocking the cement truck. Second, Vogt was concerned about liability— "[W]e don't want the liability of splashing the paint." Third, he asked "as a courtesy" to Cruz. Vogt also testified that this kind of thing "happens all the time on a job site . . . . We're not going to pour if a car's there . . . ."

From this, it was inferable that Cruz moved his truck at least in part to facilitate the pouring of the cement and thus to advance the construction of the overall project. It could be argued that Herron's particular "enterprise" was limited to framing; it did not encompass other trades, such as concrete. This view, however, is too narrow. A subcontractor whose employees interfere with timely performance by other subcontractors is not long for the construction industry. The evidence established that the need to move one's personal vehicle when it got in the way of another subcontractor was an "outgrowth" of the employment, "inherent in the working environment," and "typical of or broadly incidental to the [employer's] enterprise" for respondeat superior purposes.

At oral argument, counsel for Herron claimed that we were creating a duty of cooperation—i.e., we were requiring the employee of one subcontractor to

comply with the directions of another subcontractor, to the detriment of the employer's ability to control its own employees. Not at all. Subcontractors (and their employees) may or may not have a duty to cooperate; we express no opinion on that. Our point is that subcontractors have an *interest* in cooperating. Thus, by agreeing to move his truck, Cruz was furthering the interests of his employer, as well the interests of Vogt's employer. Nor are we in any way diminishing Herron's ability to control its employees. Herron could have told its employees that, if another subcontractor asked them to move their personal vehicles—even to facilitate construction—they were to contact a supervisor and ask permission first. But the very absurdity of such a requirement highlights the fact that it was in Herron's interest for its employees to cooperate voluntarily.

■ Alternatively, even if the evidence established that Cruz's sole subjective reason for moving the truck was to prevent damage to it, respondeat superior would still apply. " '[T]he fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer.' [Citation.] Thus, acts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal and not acts of service, do not take the employee outside the scope of employment. [Citation.] Moreover, ' "where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly nor indirectly could he have been serving his employer." [Citations.]' [Citation.]" (*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at p. 1004.)

It must be remembered that the accident occurred on the worksite, during the workday. Employees were allowed to park their personal vehicles on the worksite; typically, they parked as close as they could to wherever they happened to be working.[1] It was foreseeable that one subcontractor would have to ask employees of other subcontractors to move their personal vehicles. Indeed, as already noted, the evidence showed that this "happen[ed] all the time . . . ." Accordingly, it was hardly unusual or startling that there might be a car accident. Even assuming that, in each such instance, the employee subjectively was just trying to protect his or her vehicle, moving

---

[1] Specifically, Jeffrey Meyer, a representative of the general contractor, testified that it was "common practice for employees of subcontractors to park near where they were assigned to work that day[.]" Herron did not object to this testimony.

Vogt also sought to draw the further inference that, because Cruz parked close to where Performance was scheduled to pour cement, he must have been assigned to work there. Herron objected to this inference as speculative. It now argues that the trial court should have sustained this objection. As we do not consider the inference to be material, we do not decide this question.

the vehicle would be an "act necessary to the comfort, convenience, health, and welfare of the employee while at work."

While we have not found any case precisely on point, we have found several that are instructive. In *DeMirjian v. Ideal Heating Corp.* (1954) 129 Cal.App.2d 758 [278 P.2d 114], the defendant's employees were forbidden to smoke on the shop floor. However, they were allowed to smoke in the washroom. One employee in particular went to the washroom four or five times a day to smoke. (*Id.* at p. 761.) One day, while he was on the way to the washroom for a smoke break, he stopped to fill his cigarette lighter with paint thinner, which the employer made available for work-related purposes. In the process, he accidentally pressed the button of the lighter, setting fire to the paint thinner (*id.* at p. 762) and causing damage to the building, which was owned by the plaintiffs (*id.* at p. 761).

■ The appellate court reversed a directed verdict for the employer. It held that a jury could have found that the employee was acting in the course and scope of his employment. (*DeMirjian v. Ideal Heating Corp., supra*, 129 Cal.App.2d at pp. 764–774.) It explained, in part: "Acts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal to himself and not acts of service, do not take him outside the course of his employment. Cessation of work for eating, drinking, warming himself, and similar necessities are necessary incidents of employment. In these and other conceivable instances the employee ministers unto himself, but in a sense these acts contribute to the furtherance of his work. 'That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment.' [Citations.]" (*Id.* at p. 765.) "Although [the employee's] deviation or deflection from going directly to the washroom was for a personal reason it was committed so he could later enjoy the comfort of smoking in the washroom, where it was permitted. His main purpose was to pursue an act which was necessarily contemplated by defendant and which therefore was within his course of employment." (*Id.* at p. 772.) Here, similarly, a jury could find that, even if Cruz's subjective reason for moving his truck was personal, the fact that subcontractors' employees would want to move their vehicles—and thus the risk that an accident would result—was foreseeable, in light of the circumstances at the worksite.

It is interesting to compare *DeMirjian* to a case on which Herron relies, *Bailey v. Filco, Inc.* (1996) 48 Cal.App.4th 1552 [56 Cal.Rptr.2d 333]. There, the employee left the workplace during a paid break to buy cookies for herself and another employee to eat while on duty. On the way, she got into a

car accident. (*Id.* at p. 1557.) The employer was aware that employees had made one or more previous " 'cookie run(s).' " (*Id.* at p. 1558, fn. 1.)

A jury found that the employee was not acting within the course and scope of her employment. (*Bailey v. Filco, Inc., supra,* 48 Cal.App.4th at p. 1557.) The appellate court affirmed, holding that respondeat superior did not apply. (*Id.* at pp. 1562–1568.) However, it expressly distinguished *DeMirjian*: "The *DeMirjian* court noted that 'acts necessary to the comfort, convenience, health, and welfare of the employee *while at work* . . . do not take [the employee] outside the course of his employment.' [Citation.] *DeMirjian* is limited because the employee went to the washroom at his place of employment to use the facilities." (*Bailey,* at p. 1564.) It concluded that, in the case before it, the employee's "deviation" was substantial because "[she] did more than just stop her work for a minute to take a bite of a cookie. She did more than simply walk to [the employer]'s break room to eat cookies. During a 10-to-15-minute break, she got in her own car and drove off the work premises onto a 4-lane thoroughfare to purchase cookies to eat back at work." (*Ibid.*)

Here, as already noted, Cruz did not drive off the work premises. Even assuming that he was trying to protect his truck, that implicated his comfort and convenience while at work. Moreover, moving his truck did not involve any delay analogous to a 10- to 15-minute break. And finally, unlike in both *DeMirjian* and *Bailey,* here the employee's act of moving his truck, even if performed for subjectively personal purposes, did in fact serve the employer's overall enterprise; the risk of a vehicle accident was a foreseeable result of that enterprise.

The facts in *Avila v. Standard Oil Co.* (1985) 167 Cal.App.3d 441 [213 Cal.Rptr. 314] are even more closely analogous. There, Hernandez worked as a gas station attendant; Meza was his trainee. Hernandez's supervisor had given him permission to keep his personal motorcycle at the station. On his days off, he and Meza were fixing it up. However, the supervisor had told Hernandez not to work on personal vehicles during business hours. One day, during business hours, Hernandez asked Meza to go buy some wire that he needed for his motorcycle. Meza, driving a personal truck, got into an accident and injured the plaintiffs. (*Id.* at pp. 444–445; see also *id.* at p. 447.)

■ The trial court granted summary judgment for the employer. (*Avila v. Standard Oil Co., supra,* 167 Cal.App.3d at p. 444.) The appellate court reversed; it held that there were triable issues of fact with respect to whether Hernandez and Meza were acting within the course and scope of their employment. (*Id.* at pp. 446–449.) This was true even though their job duties did not require them to drive a vehicle. Moreover, this was true even if the

employer prohibited them from repairing their personal vehicles while on duty. (*Id.* at p. 448.) "The distinction between minor deviations and major or substantial departures from employment depends upon whether the conduct engaged in was foreseeable as that term is used in the context of respondeat superior. The test of foreseeability is whether in the particular business setting involved, the employee's conduct ' "is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." [Citation.]' [Citation.]" (*Ibid.*) "The jury should be permitted to determine whether it was foreseeable these two employees would perform work on personal automobiles and that they might leave the premises to carry out such purposes. [Citations.]" (*Ibid.*)

Herron relies on a later case, *Baptist v. Robinson* (2006) 143 Cal.App.4th 151 [49 Cal.Rptr.3d 153]. There, an employee of a winery lived on the winery premises. He was allowed to make his own personal wine; his employer had decided to stop allowing him to do so but had not told him yet. To transport some grapes he had bought, he took a bin from the winery, after work hours and without permission, and loaded it into his personal truck. The bin fell off his truck and caused an accident. (*Id.* at pp. 156–157; see also *id.* at pp. 162–163.) The appellate court held that the winery was entitled to summary judgment. (*Id.* at pp. 159–169.) It distinguished *Avila*, noting that, in the case before it, (1) the employee took the bin outside working hours, (2) the employer did not know he was taking it, and (3) the employer had decided to terminate the employee's personal winemaking, so it could not be argued that "personal winemaking was part of the exchange of benefits of his employment." (*Id.* at p. 169.)

■ This case is like *Avila* and unlike *Baptist*. Here, employees were allowed to park their personal vehicles at the worksite during working hours. Thus, it was foreseeable that they would have to move them when they got in the way of construction. As already discussed, it is inferable that this served the employer's purposes. At a minimum, however, it is inferable that the opportunity to move one's personal vehicle to prevent damage to it was "part of the exchange of benefits of [the] employment." Finally, in *Avila*, the employee was affirmatively prohibited from working on his personal motor-cycle during working hours; here, however, it appears that employees were allowed to move their personal vehicles during working hours. Thus, the facts here present, if anything, an even stronger case for the application of respondeat superior.

We therefore conclude that the trial court erred by granting summary judgment for Herron.

## IV

## DISPOSITION

The judgment is reversed. Vogt is awarded costs on appeal against Herron.

Ramirez, P. J., and Miller, J., concurred.

On November 1, 2011, the opinion was modified to read as printed above.