Filed 2/25/22  Hekmat v. MidFirst Bank CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| CYRUS HEKMAT, | B305801 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC126852) |
| v. | |
| MIDFIRST BANK, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig D. Karlan, Judge.  Affirmed.

Ervin Cohen & Jessup and David N. Tarlow for Plaintiff and Appellant.

Hinshaw & Culbertson and Michael A. S. Newman for Defendant and Respondent.

_____

Plaintiff and appellant Cyrus Hekmat sued his cousin Jonathan Mahboubi, Candice Hassid, and MidFirst Bank, among others, alleging claims arising from a loan plaintiff made to Mr. Mahboubi. Plaintiff alleged Mr. Mahboubi made misrepresentations to induce him to make the loan.

Ms. Hassid, who worked for a division of MidFirst Bank, is Mr. Mahboubi's fiancée. She set up two wire transfers by which plaintiff made the loans to Mr. Mahboubi. Plaintiff alleged Ms. Hassid knew about her fiancé's fraud when she made the wire transfers. Ms. Hassid also told plaintiff she could assist him in obtaining a line of credit from the bank, but she never did.

Plaintiff alleged the bank had respondeat superior liability for Ms. Hassid's tortious conduct. The bank did not lend any funds to plaintiff or Mr. Mahboubi. Plaintiff opened a bank account at the division where Ms. Hassid worked, through which he made the wire transfers to Mr. Mahboubi. MidFirst Bank had no other creditor/lender relationship with plaintiff.

The trial court sustained the bank's demurrer without leave to amend, entered a judgment of dismissal, and plaintiff appealed. We affirm.

## FACTS

Plaintiff sued his cousin Jonathan Mahboubi, the cousin's fiancée Candice Hassid, and MidFirst Bank, which is the only respondent in this appeal. After many rounds of pleading and demurrers (where the court rejected plaintiff's theory that the bank was vicariously liable for Ms. Hassid's alleged torts), plaintiff's fifth amended complaint stated only one cause of action against the bank for negligence.

The fifth amended complaint alleged that on September 17, 2016, Mr. Mahboubi asked plaintiff for a short-term loan of

$2 million for an "embarrassing personal emergency." Plaintiff did not know his cousin was a compulsive gambler, with millions of dollars in gambling debts.

Mr. Mahboubi agreed to repay the loan within nine months, or immediately upon demand by plaintiff, and in no event later than October 31, 2016, because plaintiff needed the funds for pending real estate transactions. Mr. Mahboubi told plaintiff he was owed a $5 million finder's fee for a real estate transaction. In reliance on this representation, plaintiff agreed to make the loan. Plaintiff told Mr. Mahboubi he himself would have to borrow money to finance the loan to his cousin, and they agreed Mr. Mahboubi would reimburse plaintiff for the interest and closing costs plaintiff incurred to borrow funds.

Mr. Mahboubi introduced plaintiff to Ms. Hassid, a business development officer and employee of 1st Century Bank, "a division of MidFirst Bank." Neither Mr. Mahboubi nor Ms. Hassid disclosed their dating relationship to plaintiff. Plaintiff and Ms. Hassid discussed plaintiff's need to secure a line of credit of $2 million to $4 million to refinance the loans he was obtaining elsewhere to fund the loan to Mr. Mahboubi. Plaintiff told Ms. Hassid he would open an account at her bank only if the bank offered him the line of credit. Ms. Hassid informed plaintiff that the bank "could provide Plaintiff with the required $2-$4 million line of credit upon approval based on plaintiff's personal financial assets and his deposits at [the bank], and that it would take 45-60 days to complete the credit line application review process."

Plaintiff opened an account with 1st Century Bank, Ms. Hassid's employer. He gave Ms. Hassid various documents in support of his credit line application but alleged she "failed to

3

properly proceed with submittal of Plaintiff's credit line application for review and approval pursuant to the standard operating procedures of [the bank]."

Plaintiff lent Mr. Mahboubi a total of $1,862,388.89 through two intrabank transfers from plaintiff's 1st Century Bank account to his cousin's account at the same bank. The first transfer of $1,262,388.89 was made on September 23, 2016. The second transfer of $600,000 was made on October 21, 2016. Plaintiff and his cousin agreed Ms. Hassid would arrange for both wire transfers. They also agreed Mr. Mahboubi would return the $600,000 by wire transfer not later than October 31, 2016.

On October 25, 2016, plaintiff texted Ms. Hassid, asking her to confirm with Mr. Mahboubi that Mr. Mahboubi was setting up the wire transfer to return the $600,000 as they had agreed. Ms. Hassid agreed to follow up with Mr. Mahboubi, but she "ultimately failed to notify Plaintiff that [Mr. Mahboubi] was not setting up a wire transfer for the repayment of the $600,000 . . . ." According to the complaint, Ms. Hassid knew Mr. Mahboubi would not repay the $600,000.

The complaint included some general allegations against the bank. Despite "red flags" raised by Mr. Mahboubi and Ms. Hassid's conduct, MidFirst Bank continued to provide services to Mr. Mahboubi which facilitated the fraud perpetrated on plaintiff. Ms. Hassid and the bank were aware of the nature of Mr. Mahboubi's business activities, and "nevertheless turned a blind eye to his suspicious activities." The complaint also alleged Ms. Hassid violated the bank's internal policies and procedures, and the bank "aided and abetted [Mr. Mahboubi] by repeatedly providing [him] with banking services despite Hassid's knowledge of the misrepresentation regarding the 'finder's fee.'

4

MidFirst Bank and Hassid repeatedly and willfully disregarded their own guidelines and allowed transactions to occur which should have been investigated and reported as suspicious activity."

Plaintiff's cousin did not repay the loan by October 31, 2016. Mr. Mahboubi told plaintiff the loan proceeds had been withdrawn in cash, which was stolen from his home. On November 21, 2016, his cousin told plaintiff he would not be repaying him. Plaintiff learned from his uncle that his cousin had never earned a finder's fee and had millions of dollars in gambling debts.

On November 2, 2016, Ms. Hassid told plaintiff that she had not yet submitted his credit line application for processing, and texted plaintiff seeking information about the property he proposed as collateral. Just a minute after texting that she was starting to process the application, she texted that the bank "won't do it" and she was working with her mentor to "find the perfect fit" and "get this done."

In the single cause of action for negligence against the bank, plaintiff alleged the bank owed him a duty of care in processing his credit line application. The bank breached that duty by failing to "assess, process and complete" plaintiff's application "within the 45-60 days timeframe that Hassid had informed Plaintiff it would take." Plaintiff alleged Ms. Hassid did not begin processing his application until 41 days after he submitted it. The bank violated "customary banking standards" by repeatedly failing to assess plaintiff's creditworthiness. Plaintiff was damaged because he had to seek a loan elsewhere, when his creditworthiness had diminished, and he was unable to qualify for an adequate loan. He did not have sufficient funds for

5

his pending real estate transactions and lost his escrow deposits and profits on those deals.  Plaintiff also alleged the bank was negligent because Ms. Hassid failed to advise plaintiff that Mr. Mahboubi did not intend to repay the $600,000 wire transfer he had promised to repay within two weeks.

The bank demurred to the fifth amended complaint, arguing that it owed plaintiff no duty, because there was no lender/creditor relationship between plaintiff and the bank; there was no breach of any duty, because the complaint alleged plaintiff's application was timely processed; and any alleged failure to timely process the credit line application did not cause plaintiff damages since the bank had no obligation to issue a line of credit to plaintiff.  Regarding the $600,000 wire transfer, the bank argued it had no duty to inform plaintiff whether or not Mr. Mahboubi had set up a wire transfer to repay the funds, and the alleged failure to inform plaintiff did not cause him damages; instead, his damages were caused by Mr. Mahboubi failing to repay the loan.

The trial court sustained the demurrer without leave to amend, finding the bank had no duty to extend credit to plaintiff, and the bank was not liable under respondeat superior for Ms. Hassid's alleged torts because she did not act in the course or scope of her employment.  This appeal timely followed the resulting judgment of dismissal.

## DISCUSSION

A demurrer tests the legal sufficiency of a complaint.  We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action.  For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law.  We also

6

consider matters that may be judicially noticed. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Ibid.*)

**1.  Negligence**

The elements of a cause of action for negligence are defendant's breach of a duty of care that was the proximate or legal cause of the resulting injury. (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 292–293.) Here, plaintiff's negligence claim is based on the bank's failure to assess his creditworthiness and process his credit line application. These allegations, as a matter of law, do not support a negligence claim because plaintiff has not articulated a legal theory to support his claim the bank owed him a duty to extend him a line of credit. On the facts alleged, the bank had no obligation to approve plaintiff's credit line application. (Accord, *Wagner v. Benson* (1980) 101 Cal.App.3d 27, 35 [bank owed no duty of care to borrower in approving loan; liability to a borrower for negligence in making a loan "arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender' "].)

Plaintiff also did not allege facts or a legal theory to support his claim the bank caused him damages, either for failing to give him a line of credit, or for Ms. Hassid failing to confirm that Mr. Mahboubi had set up a wire transfer to return the $600,000 to plaintiff. These omissions did not cause plaintiff's damages. Mr. Mahboubi caused plaintiff's damages by failing to

repay the money he borrowed from plaintiff. There is simply no causal nexus between Mr. Mahboubi's default on the loan, and the bank's or Ms. Hassid's conduct.

We are not persuaded by plaintiff's argument the complaint stated sufficient facts to show the bank has respondeat superior liability for plaintiff's claims that Ms. Hassid aided and abetted fraud, negligence, and negligent interference with prospective economic advantage.

The doctrine of respondeat superior imposes liability upon an employer for an employee's torts committed in the course and scope of their employment. (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296–297.) Respondeat superior liability is not strict liability, and the employer is not liable for every tortious act committed by its employee while working. (*Bailey v. Filco, Inc.* (1996) 48 Cal.App.4th 1552, 1560.)

Plaintiff contends Ms. Hassid acted within the scope of her authority to open new accounts, coordinate intrabank wire transfers, and process plaintiff's application for a line of credit. But the employer is not liable under the doctrine of respondeat superior if the employee's tortious actions are not required or incident to the performance of his or her duties, and are not a generally foreseeable consequence of the employer's activity. (*Bailey v. Filco, Inc.*, *supra*, 48 Cal.App.4th at p. 1559.) "If an employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior." (*Alma W. v. Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 140.) " '[E]mployees do not act within the scope of employment when they abuse job-created authority over others

for purely personal reasons.'" (*M.P. v. City of Sacramento* (2009) 177 Cal.App.4th 121, 132.)

The facts alleged here are that Ms. Hassid abused her authority as a business development officer and employee of 1st Century Bank in order to help her fiancé swindle approximately $2 million from his cousin, with whom the bank had no previous relationship. Her acts conferred no benefit upon the bank but were, instead, in violation of bank policies and procedures. On these facts, Ms. Hassid did not act within the course and scope of her employment.

## 2.     Leave to Amend

"The plaintiff bears the burden of proving there is a reasonable possibility of amendment. . . . [¶] To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' . . . The plaintiff must clearly and specifically set forth the 'applicable substantive law' . . . and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. . . . Allegations must be factual and specific, not vague or conclusionary. . . . [¶] The burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. . . . Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend. . . ." (*Rakestraw*

9

*v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43–44, citations omitted.)

On appeal, the plaintiff must state in the opening brief what new or different facts can be alleged to cure the defective pleading. "A party may propose amendments on appeal where a demurrer has been sustained, in order to show that the trial court abused its discretion in denying leave to amend. [Citation.] However, the vague claim that 'concerns' could be 'address[ed]' by an amendment or there may be a type of relief 'that will not conflict with the [ground relied upon by the court in sustaining the demurrer]' does not satisfy an appellant's duty to spell out in his brief the specific proposed amendments on appeal." (*People ex rel. Brown v. Powerex Corp*. (2007) 153 Cal.App.4th 93, 112.)

"[T]here is nothing in the general rule of liberal allowance of pleading amendment which 'requires an appellate court to hold that the trial judge has abused his discretion if on appeal the plaintiffs can suggest no legal theory or state of facts which they wish to add by way of amendment.' [Citation.]" (*Careau & Co. v. Security Pacific Business Credit, Inc*. (1990) 222 Cal.App.3d 1371, 1387–1388.)

Plaintiff says nothing in his opening brief about what new or different facts he could add to cure the defects in the fifth amended complaint. He says only in the concluding paragraph of his opening brief that he should be given leave to amend to add causes of action for aiding and abetting fraud and negligent interference with prospective economic advantage. To demonstrate an abuse of discretion, plaintiff was required to state specific facts he could add and provide legal authorities showing the new and different facts would support each element

10

of the proposed new causes of action.  Plaintiff has failed to show the trial court abused its discretion.

## DISPOSITION

The judgment is affirmed.  MidFirst Bank may recover its costs on appeal.


GRIMES, Acting P. J.

WE CONCUR:


STRATTON, J.


HARUTUNIAN, J.*

---

*        Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11