[Nos. B187173, B191349. Second Dist., Div. Eight. Apr. 7, 2008.]

HOLLY MILLER et al., Plaintiffs and Appellants, v.
AMERICAN GREETINGS CORPORATION et al., Defendants and
Respondents.

## COUNSEL

Law Offices of Maryann P. Gallagher and Maryann P. Gallagher for Plaintiffs and Appellants.

Brown, Brown & Klass, Delos E. Brown and John J. Stumreiter for Defendants and Respondents.

**OPINION**

RUBIN, J.—Holly and Paul Miller appeal from the summary judgment entered for American Greetings Corporation and its merged subsidiary, RAI, Inc. They also appeal from the trial court's order awarding American Greetings Corporation its attorney fees for the Millers' refusal during discovery to admit certain matters. We affirm the judgment, but reverse the order awarding attorney fees.

## FACTS AND PROCEEDINGS

In March 2004, Christopher Magdaleno negligently hit appellant Holly Miller with his pickup truck while she stood next to her car on Huntington Drive, a major thoroughfare in South Pasadena. She suffered severe injuries, requiring surgery and two weeks' hospitalization.

Two months later, Miller and her husband, appellant Paul Miller, sued Magdaleno. Several months later, they deposed him. In his deposition, Magdaleno testified he was driving to meet a lawyer on a personal matter, and hit Miller when he glanced down at a piece of paper to check the lawyer's address and looked back up too late to avoid the collision. Asked for details about his appointment with the lawyer, Magdaleno stated she was a probate attorney on Green Street in Pasadena. He did not, however, remember her name or her office's exact address, nor did he have her business card and had received no bill for what he described as a five-minute consultation.

Appellants further learned during discovery that Magdaleno was an installation supervisor for respondent American Greetings Corporation. In his job, he supervised a work crew that installed greeting card stands in stores throughout Los Angeles County. When not visiting stores to inspect installations by his work crew, he spent much of his time talking on his cell phone with the chief of his work crew and coordinating installations with respondent's account managers. Appellants amended their complaint to add respondent American Greetings as a defendant. The amendment was a one-page form and did not allege any new or specific facts, but it is undisputed that appellants sued respondent under a theory of respondeat superior.[1]

After becoming a defendant, respondent served requests for admission on appellants. The gist of the requests asked appellants to admit the accident was not related to Magdaleno's job. Respondent further demanded that if appellants denied any of the requests for admission, appellants must answer

---

[1] Appellants also sued RAI, Inc., doing business as American Greetings, but RAI, Inc., merged into American Greetings in 1989 and no longer separately exists.

respondent's interrogatories asking for the facts supporting their denial. Among the requests for admission were the following:

—Admit that "[t]he vehicle driven by Christopher Magdaleno in the accident of March 3, 2004, of which plaintiffs complain, was a personal vehicle of Mr. Magdaleno."

—Admit that "[a]t the time of the accident of March 3, 2004, of which plaintiffs complain, Christopher Magdaleno was not acting within the scope of any employment with American Greetings Corporation."

—Admit that "[a]t the time of the accident of March 3, 2004, of which plaintiffs complain[], Christopher Magdaleno was en route from his home to the office of an attorney on Green Street in Pasadena."

—Admit that "[a]t the time of the accident of March 3, 2004, of which plaintiffs complain, Christopher Magdaleno was traveling on personal business, not any business of American Greetings Corporation."

Except for admitting respondent did not own Magdaleno's pickup truck, appellants denied every request for admission.

Answering respondent's interrogatories demanding the facts supporting appellants' denials, appellants repeated the same response, the key portion of which stated: "Defendant American Greetings was the employer, principal, of defendant Christopher Magdaleno at the time this accident happened. Mr. Magdaleno was within the course and scope of his employment at the time the accident happened. Mr. Magdaleno was engaged in business that benefited American Greetings at the time this accident happened. Mr. Magdaleno was directly or indirectly supervising other American Greetings employees, agents in work that directly or indirectly benefitted American Greetings at the time this accident happened. . . . American Greetings is liable because their enterprise creates inevitable risks as part of doing business, one of those risks inherent in or created by the enterprise is that Mr. Magdaleno would have an automobile accident while driving his vehicle and conducting work either directly or indirectly on the cell phone."[2]

Respondent moved for summary judgment. The motion argued appellants had no evidence Magdaleno was acting within the course and scope of his

---

[2] The quoted language was actually appellants' supplemental response served after respondent moved for summary judgment. Appellants' original responses were briefer: "Plaintiff responds that defendant Christopher Magdaleno was within the coarse [sic] and scope of his employment with Amercian [sic] Greetings at the time of the accident."

employment when he injured Miller. Opposing the motion, appellants asserted Magdaleno lied during his deposition about taking the day off to meet an attorney and was in fact talking on his cell phone discussing work with his crew chief, Esteban Elizalde, when he ran into Miller. In support, appellants submitted Magdaleno's cell phone records from the day of the accident, which showed a call to Elizalde's cell phone lasting as long as 59 seconds at 9:26 a.m. Appellants argued it was therefore a triable issue of fact whether Magdaleno was acting within the course and scope of his employment when he caused the accident.

Responding to appellants' assertion that Magdaleno had lied about his activities before the accident submitted with its reply papers the traffic collision report from the South Pasadena Police Department. The report stated the accident occurred at 9:35 a.m., nine minutes after Magdaleno's call to Elizalde. Respondent also submitted 911 logs showing the 911 operator started receiving the first of multiple calls reporting the accident at 9:35:52 a.m.

At the hearing on the motion for summary judgment, the court sustained respondent's objection to Magdaleno's cell phone records as lacking authentication by the cell phone company. Having dispatched with the phone records, the court bore in on the evidence about Magdaleno's destination before the accident. The court noted appellants had no evidence to contradict Magdaleno's testimony that the accident happened when he averted his gaze from the road to look down at a piece of paper on his way to meet a lawyer on a personal matter. Appellants' only "course and scope" evidence was entries (which had been crossed out) in Magdaleno's calendar showing he had been scheduled to work the day of the accident in the cities of South Gate and Culver City, which were in the opposite direction from Magdaleno's Alhambra home as he headed toward Pasadena. Accordingly, the court found appellants had no evidence Magdaleno caused the accident within the course and scope of his employment. The court therefore entered summary judgment for respondent.[3]

Respondent thereafter moved to recover its costs of proof for appellants' denial of respondent's requests for admission that Magdaleno had not caused the accident in the course and scope of his employment. (*Barnett v. Penske Truck Leasing Co.* (2001) 90 Cal.App.4th 494, 495 [108 Cal.Rptr.2d 821] [party may recover costs of proof after summary judgment].) Appellants opposed the motion, arguing they had held a good faith belief they could prove Magdaleno caused the accident while working.

---

[3] The court also entered summary judgment for RAI, Inc., the name by which appellants erroneously sued respondent.

The court granted the motion to award costs because it concluded appellants' denials of the requests for admission were "unreasonable." The court found appellants "had no ground at all, to believe that [they] would prevail with proof that the defendant Magdaleno was acting within the scope and course of his employment at the time of the accident. [¶] [They] only had the hope that [they] would in some way disprove . . . Magdaleno's testimony that he had taken the day off [from work] and was on the way to visit a probate attorney." The court awarded respondent $8,672 in legal fees incurred in securing summary judgment. The Millers appeal from the summary judgment and the fee award.

## DISCUSSION

1. *Summary Judgment Was Proper (Appeal No. B187173)*

Magdaleno testified in his deposition that on the morning of the accident he had taken the day off work and was on his way to see a lawyer about a personal matter. He admitted running into Miller after taking his eyes off the road to check an address, and told police the same thing when they arrived on the scene.

Appellants observe that Magdaleno did not work in an office, but instead worked from his home and car, driving to stores to supervise installation of respondent's greeting card stands and relying on his cell phone to conduct business. They contend Magdaleno ran into Miller while talking on his cell phone with his crew chief, Elizalde. Therefore, appellants conclude, respondeat superior applied to make American Greetings vicariously liable for the accident. Appellants frame the issue on appeal as "whether the risk of an American Greetings employee driving and talking on the cell phone conducting American Greetings business and getting into an accident was a risk 'that may be fairly regarded as typical of or broadly incidental to' American Greetings' business." (See *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1004 [47 Cal.Rptr.2d 478, 906 P.2d 440]; *Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968 [227 Cal.Rptr. 106, 719 P.2d 676]; *Loper v. Morrison* (1944) 23 Cal.2d 600, 605–606 [145 P.2d 1].)

■ We do not quarrel with how appellants frame the issue. Their case against respondent fails, however, because their evidence does not permit a reasonable trier of fact to conclude the accident happened while Magdaleno was talking on his cell phone with Elizalde. As *McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1105 [120 Cal.Rptr.2d 23] explained, "It is not enough to produce just some evidence. The evidence must be of sufficient quality to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment."

As the trial court noted, appellants needed to show Magdaleno was lying, but they had no evidence to contradict him. Hoping to impeach Magdaleno, appellants relied on a cell phone record showing he spoke to his crew chief, Elizalde, for up to one minute at 9:26 a.m.[4] But the police report stated the accident occurred at 9:35 a.m., and 911 logs show emergency calls started coming in from the scene of the accident at 9:35:52 a.m. Magdaleno inflicted "severe injuries" on Miller on a weekday morning on a major boulevard in South Pasadena. It beggars belief that every bystander and passerby would have waited more than eight minutes after appellants claim Magdaleno hit Miller at 9:26 a.m.—the time he was talking to Elizalde—to make the first 911 call at 9:35:52 a.m., at which time the dam burst and "numerous 911" reports flooded in.

Appellants do not acknowledge, let alone discuss, the police report and 911 log. Hence, they provide no reason to question those documents' accuracy. Instead, they muddle the accident's timing by citing one eyewitness declaration that the accident happened at "approximately" 9:30 a.m. But equivocal evidence claiming no more precision than "approximately" or "about" cannot create a triable issue of fact against evidence of such high quality as 911 logs, a police report, and uncontradicted deposition testimony. (*Jane D. v. Ordinary Mutual* (1995) 32 Cal.App.4th 643, 654 [38 Cal.Rptr.2d 131].) In short, whether excluded from evidence or admitted, the cell phone record defeats appellants every which way from Sunday. If the phone record is excluded, appellants have nothing to challenge Magdaleno's testimony that he caused the accident when he looked down at a piece of paper. But if the record is admitted, it establishes he spoke to crew chief Elizalde at 9:26 a.m., more than eight minutes before the accident.

In addition to asserting Magdaleno was talking to Elizalde when he hit Miller, appellants urged the court to disbelieve Magdaleno's testimony that he was driving to see a probate attorney in Pasadena, making it, in appellants' view, a triable issue whether he was going to a jobsite instead. They observe he could not remember during his deposition many details about his meeting with the lawyer, allowing, they seem to suggest, the inference that either Magdaleno had no such appointment or it was not his principal activity that

---

[4] The trial court sustained respondent's objection to the phone record, but appellants claim the court erred in excluding the document. They do not, however, develop the point with argument and authority. They also argue respondent waived its objection to the phone record by relying on the document in its reply to appellants' opposition to the motion for summary judgment. Appellants obtained Magdaleno's cell phone records through a subpoena duces tecum to the cell phone company, but respondent objected to the record as lacking foundation because appellants did not provide the company's custodian of record's declaration with it. Although respondent challenges the record's admissibility, it does not actually dispute its veracity. Thus, in order to give appellants the full measure of all the evidence they can muster to support their case, we accept that Magdaleno called his crew chief at 9:26 a.m.

morning. As additional evidence that the day of the accident was a workday, appellants cite Magdaleno's not drawing any vacation or sick pay the week of the accident. They also point to the names of two stores—one in South Gate and the other in Culver City—handwritten in his calendar, suggesting he had work crews at those stores the day of the accident. In addition, they note that his cell phone records (which the court excluded) show he made 16 phone calls between 11:00 a.m. and 6:00 p.m. to respondent's corporate office and other employees.

None of the foregoing evidence that appellants cite creates a triable issue that Magdaleno hit Miller in the course and scope of his employment. Magdaleno testified he was driving to a probate lawyer's office on Green Street in Pasadena and caused the accident when he glanced at a piece of paper to check the lawyer's address. Attaching great significance to Magdaleno's poor recall of the details of his meeting with the lawyer, appellants imply—but never actually say—Magdaleno fabricated the meeting to deflect a trier of fact's attention from the purported fact that he was working when he ran into Miller. But even if appellants' evidence would let a reasonable trier of fact conclude that the day of the accident was a workday for Magdaleno, appellants fail to offer any evidence that could convince a reasonable trier of fact that Magdaleno was acting in the course and scope of his employment when he ran into Miller.

■ We recognize that whether something happens in the course and scope of employment is frequently not amenable to summary judgment or adjudication. (See, e.g., *Perez v. Van Groningen & Sons, Inc., supra,* 41 Cal.3d at p. 968.) This lawsuit is not, however, such a case. Appellants have no evidence Magdaleno was on the phone when he hit Miller. They instead have evidence he called his crew chief eight or nine minutes before the accident and spoke for less than a minute. We envision the link between respondeat superior and most work-related cell phone calls while driving as falling along a continuum. Sometimes the link between the job and the accident will be clear, as when an employee is on the phone for work at the moment of the accident. Oftentimes, the link will fall into a gray zone, as when an employee devotes some portion of his time and attention to work calls during the car trip so that the journey cannot be fairly called entirely personal. But sometimes, as here, the link is de minimis—one call of less than one minute eight or nine minutes before an accident while traveling on a personal errand of several miles' duration heading neither to nor from a worksite. When that happens, we find no respondeat superior as a matter of law. (*Ibid.*)

Appellants contend respondent "did not have a policy that forbid[s] employees from making personal errands during business hours." Thus, according to appellants, Magdaleno could have been acting within the course and scope of

his employment on his way to meet his probate attorney. But the existence of such a policy does not mean Magdaleno's exercising his right to run a personal errand means he was acting in the course and scope of employment as he did so. Several cases are illustrative.

In *Le Elder v. Rice* (1994) 21 Cal.App.4th 1604 [26 Cal.Rptr.2d 749] (*Le Elder*), the defendant's employee, who was on call 24 hours a day, 7 days a week, injured the plaintiff as the employee drove home after dropping his children off at school. The employee was driving a car for which the defendant employer reimbursed his mileage, and the employee was returning home to make a business call before heading into the office. (*Id.* at pp. 1606–1607.) Despite the interweaving of the employee's job and personal life, the *Le Elder* court found respondeat superior did not apply. The appellate court stated in terms that resonate with the facts here: "The question is: Was [the employee's] trip to his children's school a substantial personal deviation from his employment duties such that it would be unfair to hold the employer vicariously liable? Yes. [¶] [The employee's] purpose was to take his children to school, a purely personal activity. [He] testified he decided to drive his children to school because he was going to the office late. He planned to eat breakfast and read the paper when he returned home. He did not intend to make the business call for approximately one hour and fifteen minutes after his return home. The entire trip was a substantial deviation from his employment duties." (*Id.* at p. 1608, italics omitted.) Substitute meeting a lawyer with taking children to school, and *Le Elder*'s facts present a stronger case than do the facts here for imposing respondeat superior. Nevertheless, the appellate court found the employer was not liable because not everything an employee does during the workday is within the course and scope of employment. (Cf. *Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at p. 1004 [acts for "the comfort, convenience, health, and welfare of the employee while at work" or conduct combining personal and work purposes are not outside the scope of employment].)

*Sunderland v. Lockheed Martin Aeronautical Systems Support Co.* (2005) 130 Cal.App.4th 1 [29 Cal.Rptr.3d 665], is to the same effect. There, an employee visiting from an out-of-state office rear-ended the plaintiff at a drive-through restaurant. The employer paid the employee's travel expenses and provided a per diem for incidental expenses including food. (*Id.* at p. 7.) Nevertheless, the employee's trip to buy food was a purely personal activity not within the course and scope of the employee's work. (*Id.* at pp. 11–12.)

And finally, *Bailey v. Filco, Inc.* (1996) 48 Cal.App.4th 1552 [56 Cal.Rptr.2d 333] confirmed an employer is not liable to others whom an employee injures while running personal errands during the workday. In *Bailey*, a sales cashier had a car accident while driving to a store during a paid

work break to buy a snack for a colleague and herself. The *Bailey* court found the employer was not liable because even though "an employee does not have to be engaged in an act directly benefiting the employer [for respondeat superior to apply], respondeat superior liability is not synonymous with strict liability. The employer is not liable for every act of the employee committed during working hours." (*Id.* at p. 1560.)

Appellants take respondent to task for not offering, in their view, "any evidence whatsoever" defining Magdaleno's "course and scope of employment." They contend that without such evidence, the court could not have sensibly determined whether Magdaleno was outside the course and scope of his employment when he hit Miller. The contention is unavailing. The trial court had evidence of Magdaleno's employment duties from his occupation as an installation supervisor who drove to various jobsites overseeing work crews with whom he frequently talked on the phone. The court needed nothing more to know that meeting a probate lawyer on a personal matter was not within the course and scope of Magdaleno's employment.

Finally, appellants mention in passing that Magdaleno's e-mails and appointment schedule were missing from his work computer when they examined it during discovery. Other than seeming to imply something nefarious, they do not fully develop the point. In fact, the record indicates Magdaleno returned his work computer to respondent as part of a company-wide upgrade about eight months before appellants added respondent to their lawsuit. During the upgrade, the contents of some computers' hard drives were erased, apparently including Magdaleno's. Appellants offer no evidence, nor do they argue, that respondent intentionally erased the data to prevent appellants from recovering it.

### 2. *Attorney Fees on Discovery Sanctions (Appeal No. B191349)*

 The court awarded respondent the attorney fees it incurred in proving the points appellants refused to concede in respondent's request for admissions. (*Barnett v. Penske Truck Leasing Co., supra,* 90 Cal.App.4th 494.) The statute governing requests for admissions states a court "shall" award such fees unless "good reason" exists for the opposing party's denial of the request. (Code Civ. Proc., former § 2033, subd. (*o*), recodified with minor changes as § 2033.420, subd. (b).)[5] Appellants contend the court erred in awarding fees because they had good reason to deny respondent's requests.

---

[5] Code of Civil Procedure section 2033.420 states in part: "(a) If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so under this chapter, and if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. [¶] (b) The court shall make this order unless it finds any of the following: [¶] . . . [¶] (3) The party failing to make

We review the court's fee award for abuse of discretion. (*Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618, 637, fn. 10 [65 Cal.Rptr.2d 532].)

■ Awarding costs of proof is improper if the party who denied the request for admission "held a reasonably entertained good faith belief [it] would prevail on the issue at trial." (*Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 511 [224 Cal.Rptr. 838].) The thrust of respondent's requests was directed to forcing appellants to admit Magdaleno was acting outside the course and scope of his employment when he ran into Miller's car. (Code Civ. Proc., § 2033.010 [request for admission may include "opinion relating to fact, or application of law to fact"]; *Garcia v. Hyster Co.* (1994) 28 Cal.App.4th 724, 735 [34 Cal.Rptr.2d 283].) Magdaleno had testified in his deposition that he was on a private errand to see a lawyer the morning of the accident. He was driving his personal truck, which he leased in his name and for which he paid registration and insurance. He testified he ran into Miller's parked car when he looked down at the lawyer's address on a piece of paper, and not when he was talking on the phone with a work colleague. In awarding respondent its costs of proof, the court stated appellants' only hope for imposing respondeat superior liability on respondent was to prove Magdaleno was lying, which the court suggested was a virtually hopeless task. (*Wimberly v. Derby Cycle Corp., supra*, 56 Cal.App.4th at pp. 635–636 [to escape paying opponent's costs of proof, party must at a minimum attempt to contest with admissible evidence the facts it refused to admit under a request for admission].)

The court's seeming focus on whether Magdaleno was talking on his cell phone about work when he hit Miller was too narrow because, as our discussion of appellants' appeal from summary judgment shows, the law of respondeat superior is not so cut and dried. Thus, Magdaleno's testimony that he was not on the phone when he ran into Miller is not dispositive. Using one's car as a mobile office from which one places and receives work-related calls and conducts an employer's business is a relatively recent, and growing, business practice. As that practice spreads, the doctrine of respondeat superior must necessarily evolve if it is to continue to fulfill its purpose of ensuring businesses bear the costs of risks that " 'may fairly be regarded as typical of or broadly incidental' " to their activities. (*Farmers Ins. Group v. County of Santa Clara, supra*, 11 Cal.4th at p. 1003.) Because the law involving "mobile" offices inside an employee's car is unsettled, appellants could have reasonably entertained a good faith (albeit ultimately mistaken) belief that they could prevail here under respondeat superior. Accordingly, they committed no wrong in refusing to admit respondent's requests for admission, and the court abused its discretion by imposing respondent's costs of proof on appellants.

---

the admission had reasonable ground to believe that that party would prevail on the matter. [¶] (4) There was other good reason for the failure to admit."

## DISPOSITION

The judgment for respondents American Greetings Corporation and RAI, Inc., is affirmed. The order awarding attorney fees to American Greetings Corporation is reversed. Each side to bear its own costs on appeal.

Cooper, P. J., and Flier, J., concurred.