Filed 11/20/14  Pacific Building Development v. Kensington-Fair Oaks Assocs. Joint Venture CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PACIFIC BUILDING DEVELOPMENT INC., | H038685 |
| Plaintiff, Cross-defendant and Appellant, | (Santa Clara County Super. Ct. No. CV 056857) |
| v. | |
| KENSINGTON-FAIR OAKS ASSOCIATES JOINT VENTURE, | |
| Defendant, Cross-complainant and Appellant; | |
| TOPA INSURANCE COMPANY, | |
| Intervener and Appellant. | |

Topa Insurance Company (Topa) appeals from an order denying its post-trial motion for costs of proof under Code of Civil Procedure section 2033.420,[1] arising from the litigation involving respondent Kensington-Fair Oaks Associates Joint Venture (Kensington) and Lincoln General Insurance Company (Lincoln), the primary liability insurer of construction work on Kensington's apartment complex.  In a companion appeal (H038482)[2] we uphold the court's judgment allocating a settlement between Lincoln and

---

[1]  All further statutory references are to the Code of Civil Procedure.

[2]  This court ordered these two appeals to be considered together for oral argument and disposition.

Kensington to both of Lincoln's primary policies issued to the insured contractor, Pacific Building Development Inc. (Pacific). In this appeal Topa contends that the court's denial of Topa's motion for costs of proof constituted an abuse of discretion. We agree with Topa that in the circumstances presented, it was entitled to those costs. Accordingly, we must reverse the order and remand for the court to determine the amount of expenses Topa reasonably incurred to prove the fact Kensington had unjustifiably denied.

*Background*

The facts underlying this post-trial dispute are summarized in H038482 and need not be repeated in detail. In brief, Kensington and Pacific were engaged in litigation arising from the work performed by Pacific on Kensington's apartment complex. Both Pacific and one of its subcontractors, Rojas Construction and its principal, Rudy Rojas (collectively, Rojas), were insured by Lincoln. Lincoln covered Pacific in two successive primary policies, covering the period between June 11, 2004 and June 11, 2005 (the 04-05 policy) and the period between June 11, 2005 and June 11, 2006 (the 05-06 policy). The policies issued to Rojas were effective from January 22, 2005 to January 22, 2006, and from January 22, 2006 to January 22, 2007, each policy covering liability for property damage up to $500,000 for any one occurrence.

After Pacific's corporate status was suspended, Kensington and Lincoln settled the dispute, which included Pacific's suit against Kensington for unpaid amounts, Kensington's suit against Pacific for defective work, Pacific's cross-claims against various subcontractors (including Rojas), and Lincoln's complaint in intervention. Topa's remaining complaint in intervention was decided by court trial.

In the Kensington-Lincoln settlement the parties agreed that Lincoln would pay $1 million, to be allocated entirely to the 05-06 policy. Lincoln represented that this amount exhausted the 05-06 policy. Lincoln also represented (inaccurately, as the court later found) that it had denied coverage for its earlier policy, the 04-05 policy.

2

Lincoln agreed to assign to Kensington all of its rights asserted against Pacific's subcontractors, including Rojas. Kensington agreed to release Lincoln entirely, and to release Pacific "to the extent of the [settlement amount]," from all claims connected with the action or Lincoln's obligations under the agreement. Kensington, however, was "not releasing [Pacific] for any recovery in excess of the [settlement amount] and is not releasing any other insurer from obligations that are in excess or in addition to the one million dollars that exhausts the [Lincoln] insurance policy as recited herein." Kensington also expressly acknowledged the risk that there might be unanticipated claims connected with the litigation, and it waived any rights it had "in such unsuspected claims." Kensington further acknowledged its awareness of the Topa excess policy, and Lincoln expressed its understanding that Kensington would continue the litigation against Pacific to the extent that the Topa policy was available.

By excepting "any other insurer" from the scope of the release, the settling parties exposed the excess policy Pacific had with Topa. Before Kensington and Lincoln signed the agreement, Topa learned of the prospective settlement and intervened in the action to protect its interests. In an amended complaint it added a claim for declaratory relief against Kensington. Topa also brought an action directly against Lincoln, which was later consolidated with the Pacific-Kensington litigation. Shortly thereafter, Rojas successfully moved for an order determining its good faith settlement with Kensington.[3]

Topa eventually secured a default judgment against Lincoln, in which the court declared that the 04-05 policy applied to Kensington's claims against Pacific and that neither of the primary policies had been "properly exhausted." The Topa excess policy therefore had not been triggered.

---

[3] In that settlement Kensington agreed to dismiss its cross-complaint against Rojas "and the rights it was assigned by Lincoln General Insurance Company with prejudice in exchange for a waiver of costs."

A court trial took place on the consolidated action between January 4 and January 24, 2012.  In a comprehensive statement of decision the court found the following:  (1) The prior default judgment established that the Topa excess policy had not been triggered because the Lincoln policies had not been exhausted, and Kensington could not relitigate that point under the doctrine of collateral estoppel; (2) the 05-06 policy had not been exhausted because $350,000 of the $1 million settlement payment to Kensington must be allocated to the Lincoln policies issued to Rojas; (3) the 05-06 policy had not been exhausted because the payment to Kensington "was not made to satisfy a final judgment against Pacific, nor did it result in a final, actual settlement with Pacific"; (4) after the $1 million payment to Kensington is reduced by the $350,000 allocation to Rojas, the remaining amount must be allocated pro rata between the 04-05 and 05-06 primary policies, thereby exhausting neither.  Judgment was entered May 4, 2012.[4]

Topa moved for "cost of proof" sanctions on May 23, 2012, citing section 2033.420.  The trial court denied the motion one month later, together with its denial of Kensington's motion for new trial.  On August 16, 2012, Topa filed a timely notice of appeal.

<em>Discussion</em>

At issue in this appeal is the trial court's application of section 2033.420, which allows a party to move for sanctions if the opposing party fails to admit, upon a request for admissions, the truth of any matter and that matter is later proved true.[5]  The statute

---

[4]  On August 24, 2012, the court entered an amended judgment awarding Topa costs of $47,241.09.

[5]  This statute provides:  "(a) If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so under this chapter, and if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees.  [¶] (b) The court

4

requires the court to order sanctions unless one of the exceptions listed in subdivision (b) applies. Subdivision (b)(2), for example, permits denial of the motion if "[t]he admission sought was of no substantial importance"; and the exception in subdivision (b)(3) applies when "[t]he party failing to make the admission had reasonable ground to believe that that party would prevail on the matter."

"Requests for admissions differ fundamentally from other forms of discovery. Rather than seeking to uncover information, they seek to eliminate the need for proof." (*Stull v. Sparrow* (2001) 92 Cal.App.4th 860, 864.) "The primary purpose of requests for admissions is to set at rest triable issues so that they will not have to be tried; they are aimed at expediting trial." (*Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 509 (*Brooks*); *Cembrook v. Superior Court* (1961) 56 Cal.2d 423, 429.) An award of sanctions under section 2033.420, like its predecessor statutes, "is not a penalty. Instead, it is designed to reimburse reasonable expenses incurred by a party in proving the truth of a requested admission where the admission sought was " 'of substantial importance' [citation] such that trial would have been expedited or shortened if the request had been admitted." (*Brooks*, *supra*, at p. 509.)

Topa's motion for costs under section 2033.420 was directed at the costs of litigating one fact that Kensington had denied upon Topa's request for admissions (RFA). RFA No. 6 asked Kensington to admit "that [your] settlement with Lincoln General Insurance Company in the instant action included resolution of [your] claims against ROJAS." Kensington responded: "Objection: The requests [*sic*] for admission do [*sic*] not comport to [*sic*] C.C.P. § 2033.060. Without waiving objections: [¶] Denied."

---

shall make this order unless it finds any of the following: [¶] (1) An objection to the request was sustained or a response to it was waived under Section 2033.290. [¶] (2) The admission sought was of no substantial importance. [¶] (3) The party failing to make the admission had reasonable ground to believe that that party would prevail on the matter. [¶] (4) There was other good reason for the failure to admit."

At trial, Topa presented evidence that in settling its claims against Pacific, Kensington agreed that it would be resolving the claims against Rojas as well. In August 2009, before its suspension, Pacific had demanded $540,359 from Rojas. In March 2010, Rojas had offered to pay $350,000 and dismiss its own claim against Pacific "in exchange for a dismissal of the cross-complaint by [Pacific]." Sherry Kretzer, the Lincoln representative who had handled the claim involving Pacific, testified that she had recommended that Lincoln accept the offer. That payment did not transpire, however. Kretzer was later told that the settlement between Kensington and Lincoln involved "a release of Rojas for payment of no money." Roderick Standard, a senior vice president at the property management company used by Kensington, testified that he was involved in the mediation between Lincoln and Kensington, and there was no discussion about Rojas. Dean Mabie, assistant general counsel for the general partner of the Kensington partnership, also stated that Edward Ruberry (coverage counsel representing Lincoln at the mediation) had not included Rojas in the settlement offer he made during the mediation session.

However, Daniel Smith, attorney for Lincoln in its representation of the suspended Pacific, testified that part of the settlement involved Rojas, which would pay nothing to Kensington and give up its own cross-claim against Pacific, subject to an order of good-faith settlement. Smith was not involved in this aspect of the settlement, which had been reached during mediation, and he acknowledged that the agreement to dismiss Rojas was not expressed in the resulting written document. However, he was shown a letter he had written in April 2010 to Kretzer and Lincoln's counsel, in which Smith had explained the settlement terms arrived at during the mediation. Among those terms was the following: "Lincoln General would assign whatever rights it has as Intervenor against the subcontractors to Kensington. Once given the assignment, Kensington agrees to dismiss Rojas Construction in exchange for Rojas dismissing with prejudice its affirmative claim against [Pacific]." Smith added that the "understanding between

6

Kensington and Lincoln General regarding Rojas will not be contained in the agreement between Kensington and [Pacific]. The agreement will only state that [Pacific] is assigning its rights against Rojas to Kensington."

Smith noted in the letter that Topa was unhappy with this settlement and was expected to challenge it on the ground that the agreement to dismiss Rojas for no money was part of the settlement. Lincoln had not exhausted its policy because Rojas owed its policy limits on the case "and paid nothing as a conspiracy to artificially exhaust the [Pacific] policy." Smith also advised the recipients of the letter that Rojas's motion for good-faith settlement would not be easy to win, because it was paying nothing in a case with a large liability exposure. Smith suggested that "[t]he best argument will be that Rojas has given up their [*sic*] affirmative claims against [Pacific] in exchange of [*sic*] the dismissal and therefore the settlement is in good faith."

At trial the court admitted the letter from Smith and an April 13, 2010 entry on Lincoln's "Claims Task Management System," which stated, "Just spoke with Ed Ruberry—case settled for $1M with no payments on Rojas and no payment for atty fees. Excellent job by Ed at the mediation." James Butler, a former Vice President of Claims for Lincoln, testified by deposition that he wrote the note after Ruberry called him to say that "the case [had] settled for a million dollars on Pacific Builders, that there would be no payments on Rojas and no payments for attorney fees." Butler had already extended authority to settle the claims against Rojas for up to $350,000.

The court also admitted the deposition of Barbara Nock, who had signed the settlement agreement on behalf of Lincoln. She testified that dismissal of Rojas for no payment was a condition of the Kensington-Lincoln settlement.

In its statement of decision the trial court explained its finding that $350,000 of the Lincoln-Kensington settlement had to be allocated to resolution of the Rojas claims. The court referred to Butler's claim note as an indication that Kensington "complied with its agreement with Lincoln General to release Rojas for no additional funds beyond the

7

$1 Million payment by Lincoln General." After applying collateral estoppel to Topa's prior default judgment against Lincoln, the court stated, "The Court finds that Lincoln General paid $1 Million to resolve Kensington's claims against *both* Pacific and Rojas." That finding meant that only $650,000 was attributable to the primary policies issued to Lincoln, which therefore were not exhausted.

The court found its refusal to allocate the settlement proceeds in accordance with the agreement to be supported by both the facts and equity. It specifically found that allocating the $1 million payment exclusively to the 05-06 policy, "rather than allocating a portion of that payment to the Rojas policies, was a strategic decision to exhaust its one policy, terminate its defense obligations, trigger Topa's excess policy and prevent future claims against the 2005/2006 policy." The court further observed, "Lincoln General understood that Rojas had liability and damage exposure in the Kensington lawsuit. . . Prior to the April 2010 mediation that resulted in the Settlement Agreement, Lincoln General had an interest in settling the case on behalf of both of its insureds, Pacific and Rojas . . . Lincoln General therefore authorized a settlement on behalf of Rojas for $350,000." Lincoln's offer alone was, in the trial court's view, a sufficient basis for equitably reallocating $350,000 from the $1 million settlement payment to the policies held by Rojas.

Notwithstanding Kensington's assertion to the contrary,[6] Topa unquestionably proved the truth of the fact it had asked Kensington to admit, that Kensington's settlement with Lincoln included resolution of Kensington's claims against Rojas. The central point of the parties' dispute is whether Kensington "had reasonable ground to believe that [it] would prevail" on the issue. (§ 2033.420, subd. (b)(3).) The trial court found that it did, because (1) the settlement did not *expressly* resolve claims against

---

[6] Kensington's arguments include an oblique challenge to the trial court's factual findings and evidentiary rulings, which are not properly before us. This is Topa's appeal.

8

Rojas, and Kensington had not brought any direct claims against Rojas; (2) Roderick Standard had signed the verification of RFA No. 6 and testified that the settlement did not include Rojas; (3) the issue "hinged on" the admissibility of mediation-related documents and the court's equitable act of reallocation. Thus, Kensington, the court concluded, "had a reasonable ground to believe it could prevail."

The determination of whether expenses are justified under section 2033.420 is a discretionary one for the trial court and will not be overturned absent abuse of that discretion. By contrast, if the trial court exercises its discretion and determines that the requirements of the statute exist, reasonable expenses must be awarded." (*Brooks*, *supra*, 179 Cal.App.3d at p. 508.) " 'The abuse of discretion standard . . . measures whether, given the established evidence, the act of the lower tribunal falls within the permissible range of options set by the legal criteria.' [Citation.] A logical concomitant of our review is that there must be sufficient evidence for us to conclude that the action of the trial court was within the permissible range of options set by the legal criteria; here, that no miscarriage of justice has occurred." (*Dorman v. DWLC Corp.* (1995) 35 Cal.App.4th 1808, 1815.) " ' "[O]ne of the essential attributes of abuse of discretion is that it must clearly appear to effect injustice." ' " (*Ibid.*, quoting *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566; accord, *Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618, 637, fn. 10 (*Wimberly*).)

In the circumstances presented here, we believe that the denial of expenses did effect injustice by exceeding "the permissible range of options set by the legal criteria"—in this case, those criteria set forth in subdivisions (b)(1) through (b)(4) of section 2033.420. This is not a case in which the requested party denies liability, negligence, or a fact not within its personal knowledge.[7] Any of these situations might

---

[7] Even without personal knowledge of the fact at issue, if the requested party nonetheless "had available sources of information and failed to make a reasonable

9

give a litigant the reasonable belief that the proof at trial will vindicate its denial of the requested fact. In *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242 (*Laabs*), for example, legal causation was at issue; the plaintiff was asked to admit that her injuries were not caused by the condition of the public property on which the automobile accident occurred, and that the intersection was not dangerous if used with due care. Those were issues on which she could have reasonably and in good faith believed she would prevail. In *Wimberly*, *supra*, 56 Cal.App.4th 618, the defendant producer and distributor of a bicycle fork assembly was asked to admit that the product was defective and that the defect had caused the plaintiff's bicycle accident and resulting injuries. It denied the request but failed to produce any evidence on the soundness of the product or on lack of causation; had it done so, it might have escaped liability for the expenses plaintiff then incurred in proving that the fork assembly was defective and that the defect was the legal cause of his injuries. In *Miller v. American Greetings Corp.* (2008) 161 Cal.App.4th 1055, the plaintiffs were requested to admit that the defendant's employee was not acting within the scope of his employment when his truck struck Holly Miller, an issue that was "not so cut and dried" as the trial court had suggested when it improperly imposed costs of proof on the plaintiffs. (*Id.* at p. 1066; see also *Denver D. Darling, Inc. v. Controlled Environments Const., Inc.* (2001) 89 Cal.App.4th 1221, 1239 [denial of cost-of-proof sanction within court's discretion where ambiguity in contract led each party reasonably to believe the contract meant something different].) In *Brooks*, on the other hand, the plaintiff had "no good reason" to deny the straightforward fact that his truck was "as little as a fraction of an inch" over the center line of the road when it was struck by an oncoming bus. (*Brooks*, *supra*, 179 Cal.App.3d at p. 511.)

investigation to ascertain the facts, such failure will justify an award of expenses under section [2033.420]." (*Brooks*, *supra*, 179 Cal.App.3d at p. 510; accord, *Rosales v. Thermex-Thermatron, Inc.* (1998) 67 Cal.App.4th 187, 198; *Wimberly*, *supra*, 56 Cal.App.4th at p. 635.)

10

Neither *Brooks* nor *Wimberly*, the two cases cited by the trial court in its decision, provides a test that is strictly responsive to the current issue, whether Kensington had reasonable grounds to believe that it would prevail on RFA No. 6.  The provision applicable here is subdivision (b)(3) of section 2033.420, which exempts a party from sanctions if, at the time of the denial, he or she had a "reasonable ground to believe that that party would prevail on the matter."  *Brooks* applied a more general standard reflective of the statute operative at that time, former section 2034, subdivision (c).  That provision required the imposition of the sanction if "there were no good reasons for the denial and that the admissions sought were of substantial importance."  (Stats. 1982, ch. 138, § 1.) The *Brooks* court provided guidelines for determining whether there were "good reasons" for the denial of the requested fact:  The requested party may have reasonably viewed the subject matter as "relatively trivial"; the party may have lacked personal knowledge of the matter but "had available sources of information and failed to make a reasonable investigation to ascertain the facts; and whether the party has attempted in good faith to reach a reasonable resolution of the matters involved.  (*Brooks*, *supra*, 179 Cal.App.3d at pp. 510-511.)  In short, under the former statute, as applied in *Brooks*, "there must be some reasonable basis for contesting the issue in question before sanctions can be avoided."  (*Id.* at p. 511.)

The *Brooks* court stated that in determining whether there were "no good reasons for the denial" under former section 2034, subdivision (c), a court "may properly consider whether at the time the denial was made the party making the denial held a reasonably entertained good faith belief that the party would prevail on the issue at trial." (*Brooks*, *supra*, 179 Cal.App.3d at p. 507 & fn. 4; *id.* at p. 511.)

The court in *Wimberly*, *supra*, applied former section 2033, subdivision (o), which was substantively identical to the current provision, section 2033.420.  In reversing the order denying sanctions, the appellate court emphasized that the defendant, after denying the defect in the bicycle fork assembly, had not produced any evidence at trial to rebut

11

the evidence of either the defect or causation. The defendant therefore had "no reasonable belief [that] it could prevail on the causation and defect issues." (*Wimberly*, *supra*, 56 Cal.App.4th at p. 638.) Notably, the court did not use the term "good faith" in determining whether the defendant had a reasonable basis for denying the existence of the defect.

Subsequently, however, the court in *Miller*, *supra*, applied the "good faith" language in the *Brooks* discussion of former section 2034, subdivision (c), to the *current* version of the sanctions statute, section 2033.420, in determining that the plaintiffs "could have reasonably entertained a good faith (albeit ultimately mistaken) belief that they could prevail . . . under respondeat superior." (*Miller v. American Greetings Corp.*, *supra*, 161 Cal.App.4th at p. 1066.) Similarly, the court in *Laabs*, *supra*, held that the trial judge "could have easily concluded" that the plaintiff, in refusing to admit the lack of dangerousness of the intersection, "reasonably held a good faith belief that she would prevail at trial on these issues." (*Laabs*, *supra*, 163 Cal.App.4th at p. 1277.) But in both *Miller* and *Laabs* it appears that the issue under consideration was the fourth exception, that "[t]here was other good reason for the failure to admit" (§ 2033.420, subd. (b)(4), former § 2033, subd. (o)), not section 2033.420, subdivision (b)(3).

Subdivision (b)(3) of section 2033.420 does not use language suggesting "good faith" of the denying party as a consideration in determining whether to award sanctions against that party. It appears to require only the party's *objectively reasonable* belief that he or she will prevail on the issue. But even if the "good faith" factor is tenable in the determination of the subdivision (b)(3), the trial court did not make any finding that Kensington's denial was made with good faith. Instead, its ruling directly reflected the language of subdivision (b)(3), by stating that Kensington "had reasonable grounds to believe that . . . it would prevail on the matter."

To uphold this ruling, however, would effect a manifest injustice in the circumstances before us. Kensington's belief that it would prevail was based on its

12

confidence that it could conceal its side agreement with Lincoln by relying on the written integrated settlement agreement, Roderick Standard's and Dean Mabie's testimony, and Kensington's objections to the admission of mediation documents. Topa was not requesting admission of a party's opinion, a legal conclusion, or an application of law to fact. (See *Garcia v. Hyster Co.* (1994) 28 Cal.App.4th 724, 735.) In such requests it may be more likely that the requested party reasonably believed that he or she would prevail on that issue. Here, by contrast, Kensington was asked to admit a simple fact within its personal knowledge or, at the very least, easily confirmed by minimal investigation: that its settlement with Lincoln included Kensington's dismissal of Rojas from its lawsuit. Even without considering whether Kensington denied RFA No. 6 in "good faith," we cannot see how the grounds for Kensington's belief that it would prevail on this factual issue could have been reasonable. Topa therefore should not have been forced to expend considerable sums at trial to prove that the settlement included dismissal of Rojas.

Kensington suggests an alternative ground for upholding the denial of sanctions: citing the exception provided in subdivision (b)(2) of section 2033.420, it contends that RFA No. 6 was of "no substantial importance." The trial court, however, properly found against Kensington on this question. It noted the *Wimberly* court's explanation of "substantial importance": "An issue is of 'substantial importance' if it has 'at least some direct relationship to one of the central issues in the case, i.e., an issue, which, if not proven, would have altered the results in the case.' " (*Wimberly*, *supra*, 56 Cal.App.4th at pp. 634-635, quoting *Brooks*, *supra*, 179 Cal.App.3d at p. 509.) Here, the trial court reasoned that "the issue of whether the $1 million Lincoln General settlement payment included resolution of the Rojas claims is of substantial importance because the inclusion of the Rojas claim meant that a substantial portion of the $1 million payment would be allocated towards that claim, leaving the primary policy short of exhaustion. The issue of whether the primary policy was exhausted (so as to trigger Topa's excess policy) was a central issue in Topa's action against Kensington." The trial court's exercise of

13

discretion on this point is amply supported by the facts on which it based its conclusion. Unquestionably subdivision (b)(2) is inapplicable here.

Kensington does not suggest any "other good reason for the failure to admit" RFA No. 6, under the catch-all exception to sanctions in section 2033.420, subdivision (b)(4). We therefore must remand this matter to enable the trial court to ascertain the amount of reasonable expenses Topa incurred in proving the matter specified in RFA No. 6.

<em>Disposition</em>

The order denying Topa's motion is reversed. Upon remand, the trial court shall have the opportunity to determine the amount of reasonable expenses to which Topa is entitled to recover pursuant to Code of Civil Procedure section 2033.420.

_____

ELIA, J.

WE CONCUR:


_____

PREMO, Acting P. J.


_____

MÁRQUEZ, J.